**UNITED STATES OF AMERICA, Plaintiff**

**v.**

**ALCANO FRANCIS, JR., LAVERNE FRANCIS, JAMES A. BENNERSON, VIVIAN H. BENNERSON and ESTATE OF LOUISA FRANCIS, Defendants**

Civil No. 1985/12

District Court of the Virgin Islands

Div. of St. Croix

December 11, 1985

JIM U. OLIVER, JR., ESQ., Assistant U.S. Attorney, Christiansted, St. Croix, V.I., and LYNN AHWESH, ESQ., Harrisburg, Pa., U.S.A., *for plaintiff*

EDWARD J. OCEAN, ESQ., Christiansted, St. Croix, V.I., *for defendants James A. and Vivian H. Bennerson*

KEVIN A. RAMES, ESQ., Christiansted, St. Croix, V.I., *for defendants Alcano Francis, Jr., Laverne Francis and Estate of Louisa Francis*

O'BRIEN, *Judge*

## MEMORANDUM OPINION

The United States asks us in this case to impose an equitable lien on certain property in Frederiksted, St. Croix upon which it origi-

nally held a mortgage from a person whose deed was declared void. The Defendants James A. and Vivian H. Bennerson seek to have the government's mortgage invalidated, and urge that it is not entitled to any lien for the amount of the improvements placed on the property with the mortgage proceeds.

For the reasons stated herein, we will grant the equitable lien in the amount of the mortgage balance to be paid according to the terms of the mortgage.

## I. FACTS

In August 1972, Mary R. Richardson was the grantee of a deed purportedly from Antoinette Bennerson, as grantor, which conveyed Plot 107-E of Estate Whim in Frederiksted, St. Croix. In September 1973, Ms. Richardson obtained a mortgage from the Farmers Home Administration for $18,000.00 and a house was constructed on the plot, using the proceeds from the promissory note and security instrument.

In February 1974, Ms. Bennerson began an action to have the deed declared invalid, as a forged instrument. The Farmers Home Administration was not joined as a necessary party, and no lis pendens was filed until May 23, 1980. On July 2, 1981, the deed from Bennerson to Richardson was declared void and an appropriate judgment was entered. There has never been any suggestion that Mary R. Richardson was a party to the forgery, or anything other than an innocent whose deed was voided by the acts of another.

Having successfully obtained the return of her property, Antoinette Bennerson, in August 1982, conveyed the plot to her son and his wife, the Defendants Bennerson in the action herein.

The United States of America then began, in 1985, this action in foreclosure against the Bennersons, Alcano and Laverne Francis, tenants, and the Estate of Louisa Francis, a potential successor in interest to Mary Richardson, now deceased. The Bennersons counterclaimed, seeking to have the mortgage declared invalid. The case is before the Court on an agreed set of facts upon which oral argument has been held, and is thus ripe for disposition.

## II. DISCUSSION

Once the deed from Richardson to Bennerson was invalidated, the mortgage from Richardson to the Farmers Home Administration was likewise invalid. But, although the mortgage itself is invalid because of the invalidity of Richardson's title, the government is not

beyond the pale of equitable relief. Gladowski v. Felczak, 31 A.2d 718, 719 (Pa. 1943). In order to obtain that relief, however, the government must fit its claim within the parameters of the Restatement of Restitution.[1]

Can a person who mistakenly makes improvements on the land of another maintain an independent action to obtain compensation for the value of the improvements when the true owner had no notice of the construction? Section 42(1) of the Restatement of Restitution states:

Improvements upon Land or Chattels

(1) Except to the extent that the rule is changed by statute, a person who, in the mistaken belief that he or a third person on whose account he acts is the owner, has caused improvements to be made upon the land of another, is not thereby entitled to restitution from the owner for the value of such improvements; but if his mistake was reasonable, the owner is entitled to obtain judgment in an equitable proceeding . . . only on condition that he makes restitution to the extent that the land has been increased in value by such improvements . . . .

Under Section 42(1) it is clear that the government would only be entitled to restitution for the improvements where the property owner filed the original action, and the government counterclaimed or asked for a setoff as to the amounts claimed by it. But in the case under consideration, it is the government which brought the action, and the Bennersons who have counterclaimed to have the mortgage invalidated.

■ However, the government was only placed in the position of filing the action itself because it was never made a party to, nor given notice of, the action in 1974 brought by Antoinette Bennerson to have the deed to Mary R. Richardson invalidated. Clearly, the government, as a mortgagee, should have been made a party to that case in 1974, where it would have had the opportunity to seek equitable relief by way of setoff or counterclaim. Hoheb v. Muriel, 753 F.2d 24 (3d Cir. 1985). Failing that, the government properly brought this action to obtain the relief it would have sought if it knew of or had been joined in, the 1974 action. Thus, the procedural

---

[1] Under 1 V.I.C. § 4, the rules of common law as expressed in the Restatements shall be the rules of decision in the courts of the Virgin Islands to which they apply, in the absence of laws to the contrary.

hurdle described in Section 42(1) has been overcome by the government.

We turn next to the question of whether, under the circumstances of this case, an equitable lien should be imposed on Plot 107-E of Estate Whim. Section 170 of the Restatement of Restitution provides:

> Where a person makes improvements upon property of another or otherwise increases its value, being induced by . . . mistake of such a character that he is entitled to restitution, he is entitled to an equitable lien upon the property.

Comment a to this section emphasizes that for it to apply, the claimant must meet the condition described in Section 42(1), i.e., that the lien be sought in an action brought by the true owner. We have already held that under the circumstances of this case, the government will not be held to that requirement because of the failure of Antoinette Bennerson to join it as a party in 1974, and its own lack of knowledge of that litigation.

Both the government and the Bennersons are innocent parties with regard to the circumstances which bring them before the Court. There is no claim that on the one hand, the government knew of the forgery of the deed to Mary R. Richardson, or, on the other, that the Bennersons knew that federal funds were being used for construction of a house on the plot. But the Bennersons have unquestionably benefited from the improvement. What was once a plot of unimproved land is now a piece of property with a house on it, having much greater value.

■ ■ We adopt the language of Stevens v. Crowder, 273 So. 2d 793, 794 (Fla. Dist. Ct. App. 1973) as representative of the holdings in the various jurisdictions, and with which we align ourselves:

> It is well established that an equitable lien on property benefited arises where a person in good faith and under mistake as to the condition of title, makes improvements, renders services, or incurs expenses that are permanently beneficial to another's property . . . . Thus, unjust enrichment of the owner thereof at the expense of the claimant is prevented. Further, an equitable lien is one which may be declared by a court of equity out of general consideration of right and justice as applied to relations by the parties and the circumstances of their dealings in the particular case.

See also Benedict v. Little, 264 So. 2d 491 (Ala. 1972); Farmers National Bank of Bloomsburg v. Albertson, 199 A.2d 486 (Pa. Super. Ct. 1964); Frazier v. Frazier, 264 S.W.2d 665 (Ky. Ct. App. 1954). The application of this reasoning to the case herein revolves around the fact that the mortgage money was used wholly for the benefit of the property.

> The crucial fact is that the mortgage money was used wholly for the benefit of the property which has now been restored to the ownership and possession of the (Bennersons) . . . . If the (Bennersons) were to be allowed, without any equitable obligation on (their) part, to hold the property freed of that judgment and with its (property) restored . . . and plaintiff were to be denied the right to recover the money loaned by them in good faith and used, in the manner indicated, for the ultimate benefit of the (Bennersons), every proper conception of morals and fair dealing would be violated.

Gladowski v. Felczak, supra, at 719.

■ Given all the circumstances in this case, we believe we are compelled to grant the government an equitable lien.

## III. MANNER AND TERMS OF REMEDY

The purpose in granting an equitable lien is not to give the government a profit, but rather to return to it the value of the benefit conferred. In this case, the money advanced under the promissory note and mortgage was $18,000.00. However, that principal sum has been reduced to $14,613.64, with interest owing in the amount of $3,252.29 up to January 2, 1985, and further interest owing from January 2, 1985 to the date of entry of judgment herein, in the subtotal amount of $717.80.

■ We will require immediate payment of the interest owing, or $3,970.09. On January 1, 1986, the Bennersons will pay a yearly installment payment of principal and interest in the amount of $1,449.00 as provided for in the debt instrument given to Farmers Home Administration by Mary R. Richardson. On each January 1st thereafter, until the entire debt and principal is paid in full, the same amount will be paid.

This, to us, is the most equitable method of requiring payment of the equitable lien. Of course, nothing will prevent the Bennersons from pre-payment of the amount due. Since the Court file reflects that money is being held in an amount considerably greater than the

amount ordered to be paid now and on January 1, 1986, we have full confidence in the Bennersons' ability to meet their obligations as ordered. This money constitutes rents held by an attorney for the Estate of Mary R. Richardson. That party is not before the Court, thus we are not in a position to dictate its payment. However, since the ownership of the Bennersons in Plot 107-E of Estate Whim is unquestioned, and we do not direct payment out of the rental proceeds over to the Farmers Home Administration, there can be no reason to withhold the payment of those sums to the Bennersons. They can then make the payments ordered by this Court.

## CONCLUSION

Judgment will enter creating an equitable lien in favor of the United States of America and against the property known as:

Plot 107-E of Estate Whim, consisting of 0.2993 U.S. acre, more or less, as shown on Public Works Drawing No. 2681 dated June 21, 1969.

Payments will be made toward satisfaction of the equitable lien as provided for above.

## JUDGMENT

THIS MATTER came before the Court on submission by the parties on an agreed set of facts, and after oral argument on the law. The Court having filed its Memorandum Opinion of even date herewith, now therefore it is

ORDERED AND ADJUDGED:

THAT an equitable lien is hereby created in favor of the plaintiff against the real property known and described as:

Plot 107-E of Estate Whim, St. Croix, consisting of 0.2993 U.S. acre, more or less, as shown on Public Works Drawing No. 2681 dated June 21, 1969.

THAT the lien shall be in the amount of the principal sum of $14,613.64 and past-due interest owing of $3,970.09, which shall be paid by the owners of the aforedescribed plot as follows:

(1) The interest amount of $3,970.09 will be paid in hand to the attorney for plaintiff within ten (10) days of the date of entry herein;

(2) The sum of $1,449.00 shall be paid on or before January 1, 1986 and every January 1st therafter until the entire principal

511

and interest due is fully paid according to the terms of a promissory note executed by Mary R. Richardson which note is an exhibit to the plaintiff's complaint;

(3) The payment provided for in No. 2 above may be made to the person or entity designated by the plaintiff as its agent for receipt of the funds.